J-A29001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

K.L.M.

        Appellant

      v.

J.P.M.

:   IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
:
:
:
:
:
:
:
:   No. 1049 EDA 2018

Appeal from the Order Entered March 8, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  Case ID. 0C1700058

BEFORE:   OTT, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.:            **FILED DECEMBER 31, 2018**

K.L.M. ("Mother") appeals from the order entered March 8, 2018, which denied her petition for primary physical custody of the parties' children, S.M., a female born in November 2012, and J.M., a male born in December 2015 (collectively, "the Children"), and awarded shared physical custody to her and J.P.M. ("Father").  The order also dismissed Mother's petition for contempt and denied her counter-affidavit opposing Father's purported relocation.  After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows.  Mother and Father are former spouses.  During their marriage, the parties lived with the Children in Philadelphia.  They separated in December 2016 and divorced in May 2017.  On January 13, 2017, Father filed a complaint requesting shared legal and physical custody of the Children.  Mother filed her own complaint on February 8, 2017, requesting shared legal custody and

_____

*   Former Justice specially assigned to the Superior Court.

primary physical custody. The parties entered into a temporary agreement, dated February 28, 2017, which the trial court entered as an order of court on March 2, 2017. The order awarded shared legal custody to both parties and primary physical custody to Mother. In addition, the order included a provision instructing that neither party "shall make any changes in the residence of any child which significantly impairs the ability of any other party to exercise their custodial rights without first complying with all applicable provisions relating to relocation that are set forth in 23 Pa.C.S. § 5337 and Pa.R.C.P. 1915.17." Order, 3/2/2017, at 1-2 (unnecessary capitalization omitted).

On June 19, 2017, Father filed a petition for expedited custody listing and/or temporary relief regarding custody, in which he averred that Mother was not allowing him to have custody of the Children while she was working, contrary to their best interests. He also requested temporary shared physical custody pending further order of court. Mother moved from Philadelphia to Cheltenham, Montgomery County, in August 2017. On September 8, 2017, Father withdrew his petition.

On September 12, 2017, the parties entered into a custody stipulation whereby they each received shared legal and physical custody. Both parties have unconventional work schedules, as Mother is a paramedic and Father is a firefighter. The stipulation provided that custody exchanges would take place according to Mother's work schedule, because it is the more consistent of the two. Specifically, Mother's schedule alternates between "short weeks," including Sunday, Wednesday, and Thursday, and "long weeks," including

Monday, Tuesday, Friday, and Saturday. Mother always works the night shift.

The stipulation provided that, during Mother's short weeks, Father would have

custody of the Children from Wednesday at 9:00 a.m. until Friday at 9:00

a.m. During Mother's long weeks, Father would have custody from Monday

at 6:00 p.m. until Wednesday at 9:00 a.m. and from Friday at 9:00 a.m. until

Sunday at 4:00 p.m. The trial court entered the stipulation as an order of

court on September 22, 2017. Once again, the order included a relocation

provision. The provision stated that any party "proposing to relocate with the

child should notify every other individual who has custody rights to the child

by certified mail no later than sixty days prior to any proposed relocation and

file the necessary pleadings with the Philadelphia Court of Common Pleas

pursuant to 23[]Pa[.]C.S. Section 5337." Order, 9/22/2017, at 4.[1]

Shortly after signing the custody stipulation, Mother learned that Father

had moved from Philadelphia and purchased a home in Douglassville, Berks

County. In response to Father's move, Mother's counsel sent a letter to the

trial court dated September 26, 2017, asking that it vacate the September 22,

2017 order. Father's counsel then sent his own letter to the court, dated

_____

[1] The order also stated, "The parties acknowledge that Father resides in Philadelphia County, and Mother resides in Montgomery County, however, the parties agree that Philadelphia shall retain jurisdiction over this matter so long as either party resides here." Order, 9/22/2017, at 2. At the start of the hearing in this matter, Father's counsel argued that the case should be in Montgomery County or Berks County where the parties live. N.T., 3/8/2018 at 6-8. After listening to argument from Mother's counsel opposing a transfer of venue, the trial court ruled in favor of retaining the case in Philadelphia. *Id.* at 8-9. Mother does not question whether Philadelphia was the proper venue for this matter.

September 28, 2017, to which Mother responded by sending a second letter, dated October 3, 2017. On October 4, 2017, Father's counsel provided Mother with a notice of proposed relocation, along with a counter-affidavit. Mother filed the counter-affidavit opposing relocation on November 1, 2017.

On January 19, 2018, Mother's counsel sent another letter to the trial court. In her letter, Mother requested that the court deny Father's relocation and award her with primary physical custody of the Children. Mother filed a petition to modify custody on January 22, 2018, requesting shared legal and primary physical custody. Mother filed a separate petition for contempt that same day, in which she argued that Father relocated in violation of the March 2, 2017, and September 22, 2017 orders.

The trial court conducted a hearing on March 8, 2018, during which it first heard the testimony of Mother. Mother asserted that traveling to and from Father's new home in Berks County is detrimental to the Children and that they appear hungry, tired, and stressed after returning from his care. N.T., 3/8/2018, at 35-40, 66-67, 115, 126-28. She questioned how Father would be able to transport S.M. to school once she starts full-day kindergarten during the next school year and expressed concern that the Children would have to wake up earlier in order to complete the trip. *Id.* at 40-43, 67. She also touted her status as the Children's primary caretaker during her marriage to Father and stated that she is still the primary caretaker despite the shared physical custody schedule. *Id.* at 47-49. Mother criticized Father's decision to move to Berks County shortly after negotiating the September 12, 2017

- 4 -

custody stipulation and without providing her with notice. *Id.* at 31-36. She testified that she would not have signed the stipulation if she had known of Father's impending move. *Id.* at 35-36, 130.[2]

After Mother's testimony, the trial court attempted to interview S.M. However, the process proved too upsetting for S.M. and she did not answer any questions. *Id.* at 163. The court then heard testimony from Father. Father challenged Mother's claim that the Children were doing poorly in his care, stating that their trips to and from Berks County last less than an hour and resemble a "press conference" during which the Children ask him many questions. *Id.* at 175, 180. He defended his decision to leave Philadelphia, describing it as an increasingly dangerous and drug-ridden environment and expressing concern with the quality of its public schools. *Id.* at 171-72. He also discussed his own performance of parental duties after his separation from Mother. *Id.* at 181-87.

Following the hearing, the trial court entered the order complained of on appeal, in which it awarded the parties shared legal and physical custody of the Children pursuant to the same schedule contained in the September 22,

---

[2] Notably, Father's counsel conducted cross-examination of Mother, during which he questioned her extensively about a Protection From Abuse ("PFA") proceeding she initiated against Father in December 2016. Mother obtained a temporary PFA order but a trial court vacated the order and dismissed her petition after a hearing. N.T., 3/8/2018, at 81-84, 103-04.

2017 order.[3]  The court further dismissed Mother's petition for contempt and denied her counter-affidavit opposing Father's purported relocation.  Mother timely filed a notice of appeal on April 6, 2018, along with a concise statement of errors complained of on appeal.[4]  The court filed an opinion on July 18, 2018.

> Mother now raises the following issues for our review:
>
> 1) Whether the trial court abused its discretion when it failed to delineate the reasons for its decision and apply the factors listed in 23 Pa. C.S. §5337 and 23 Pa. C.S. §5328 within a timely manner after it issued its March 8, 2018, Order?
>
> 2) Whether the Trial Court erred when it did not explain all ten relocation factors listed in 23 Pa. C.S. §5337?
>
> 3) Whether the Trial Court's failure to consider the fact that Father did not give Mother timely notice of his relocation was an abuse of discretion?

---

[3] The copy of the docket contained in the certified record indicates that the trial court entered its order on March 8, 2018.  Curiously, Mother filed a copy of the trial court docket in this Court at the same time as her notice of appeal.  Mother's copy of the docket indicates that the court entered its order on March 20, 2018.  We observe that Mother's appeal is timely using either date so that we need not resolve this discrepancy.

[4] Mother also filed a motion for reconsideration on April 6, 2018.  The trial court issued a rule to show cause order on May 1, 2018, scheduling a hearing on the motion.  However, by then, the time to grant or deny reconsideration had already passed.  **See** Pa.R.A.P. 1701(b)(3)(ii) (providing that the trial court must file an order granting reconsideration "within the time prescribed by these rules for the filing of a notice of appeal or petition for review of a quasijudicial order with respect to such order, or within any shorter time provided or prescribed by law for the granting of reconsideration.").

4) Whether the Trial Court abused its discretion in finding that the parties should continue shared custody and that such was in the children's best interests, despite Father's move?

5) Whether the Trial Court's failure to find Father in Contempt of Court, to issue sanctions or award counsel fees and costs was an abuse of discretion?

Mother's brief at 3.

We review Mother's claims in accordance with our well-settled standard

of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

When a trial court makes an award of custody, the best interest of the

child is paramount. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014).

The factors that a court must consider when awarding custody are set forth

at 23 Pa.C.S.A. § 5328(a):

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In addition, when considering a request for relocation, a trial court must consider the following factors:

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

In its opinion, the trial court found that it would be in the Children's best interests to continue with the shared custody arrangement contained in the September 12, 2017 stipulation. Trial Court Opinion, 7/18/2018, at 5. The court noted that it did not need to discuss the Section 5328(a) factors because it did not change the parties' custody award. *Id.* at 6. Nonetheless, the court

- 10 -

proceeded to discuss each of the factors.[5,6] *Id.* at 7-12.  The court reasoned that it would be appropriate for the Children to maintain a routine schedule and develop a relationship with both parties.  *Id.* at 5.  It found that Father does not pose a risk of harm to the Children despite Mother's past allegations of abuse.  *Id.* at 7.  In addition, it found that both parties are equally able to attend to the Children's needs and provide love, stability, and nurturance.  *Id.* at 8-10.  The court seemingly rejected Mother's assertion that traveling to and from Berks County is detrimental to the Children.  *See*, *e.g.*, *id.* at 10 (noting the distance between the parties but finding that it would be in the Children's best interests to spend an equal amount of time in each parent's custody).  It also declined to fault Father for failing to provide notice of his move to Mother, observing that Mother failed to provide notice of her own move to Montgomery

---

[5] We disagree with the trial court that it did not need to consider the Section 5328(a) factors in this case.  This Court has explained that trial courts must consider the factors whenever a party requests modification of a custody award, even if the court ultimately denies that request.  *S.W.D.*, 96 A.3d at 406 (concluding that the trial court in a custody case "was required to consider all the § 5328(a) best interest factors.  Even if the trial court only reaffirmed its prior order, it nonetheless was ruling upon a request to change the form of physical custody and, therefore, bound to decide whether the prior order remained in Child's best interest.").  Nonetheless, because the court went on to discuss the Section 5328(a) factors anyway, we need not remand for further explanation of its decision.

[6] The trial court did not conduct a separate analysis of Section 5328(a)(2.1). However, the parties presented no evidence relevant to that factor during the hearing.

- 11 -

County to Father and that his motivation was to give the Children a better life by moving to a safer community with better schools. *Id.* at 11-12.

The trial court further addressed its ruling permitting Father's relocation. The court did not include a separate discussion of the Section 5337(h) factors in its opinion, indicating that it considered those factors as part of its Section 5328(a) analysis. *Id.* at 13. Nonetheless, the court did provide some general discussion of its relocation decision. The court emphasized that Father agreed to provide all the transportation for the Children and that his move would not have a substantial effect on the parties' existing custody arrangement. *Id.*

Finally, the trial court explained that it did not find Father in contempt because he did not willfully disobey the prior custody orders. *Id.* at 14-16. In relevant part, the court reasoned once again that Mother did not provide notice of her own move to Montgomery County. *Id.* at 14. It further reasoned that Father moved in order to establish a better environment for the Children and that the move would have no impact on the parties' custody arrangement. *Id.* at 14-15.

In her first claim, Mother argues that the trial court abused its discretion by failing to delineate the reasons for its decision and apply the factors listed in Sections 5328 and 5337 within a timely manner after issuing the March 8, 2018 order. Mother's brief at 25-30. Mother contends that the court did not issue its opinion explaining the order until four months later, on July 18, 2018. *Id.* at 25-26. She maintains that the court's delay violated 23 Pa.C.S.A. §

5323(d), Pa.R.A.P. 1925(a)(2)(ii), and this Court's case law, requiring reversal of the order.[7]  *Id.* at 26-30.

We agree with Mother that the trial court committed an error of law by failing to file an opinion until July 18, 2018.  This Court has held that a trial court in a custody case must file an opinion setting forth the reasons for its decision prior to the expiration of the thirty-day appeal period.  *See C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013) ("[W]e now hold that section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a)] factors prior to the deadline by which a litigant must file a notice of appeal."); *A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013) ("[O]ur holding in *C.B.* . . . extends to cases that involve both custody and relocation pursuant to section 5337.").  However, it is clear that the court's delay in the instant matter did not prejudice Mother in any way and that remanding this case for that reason would serve no purpose.  Therefore, we conclude that Mother's first claim does not entitle her to relief.

---

[7] Section 5323(d) of our child custody statute provides that a trial court in a custody case must "delineate the reasons for its decision on the record in open court or in a written opinion or order."  23 Pa.C.S.A. § 5323(d).  Further, Rule 1925 (a)(2)(ii) provides that a court in a Children's Fast Track appeal, "[u]pon receipt of the notice of appeal and the concise statement of errors complained of on appeal . . . if the reasons for the order do not already appear of record, shall within 30 days file of record at least a brief opinion . . . ."  Pa.R.A.P. 1925(a)(2)(ii).

In her second claim, Mother argues that the trial court erred by failing to evaluate the Section 5337 relocation factors in its opinion. Mother's Brief at 30-33. Mother contends that the court considered the relocation factors collectively as part of its Section 5328(a) analysis, but did not set forth an individual analysis as to each factor, in violation of case law. *Id.* at 33.

Mother is correct that trial courts in relocation cases must consider each of the Section 5337 factors when rendering a decision. Courts may not simply indicate that they considered the factors without further explanation, but must discuss each factor individually. *See E.D. v. M.P.*, 33 A.3d 73, 81 (Pa. Super. 2011) (explaining that the panel could not ascertain whether the trial court considered all of the Section 5337 factors and that, "[t]o the extent that the trial court did consider these factors, it did so in a cursory manner without references to the record or explanations for its conclusions.").

However, because the record confirms that Father did not "relocate" as the statute defines that term, it was not necessary for the trial court to provide an exhaustive discussion of the Section 5337 factors. Section 5322 defines "relocation" as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322. In this case, the court found that Father's move to Berks County did not impair Mother's custody rights significantly and the record

- 14 -

supports this finding.[8]  The parties' custody schedule remained unchanged following Father's move to Berks County.  Moreover, Father agreed to provide all transportation to and from custody exchanges, such that his move did not cause Mother to experience any additional hardship or expense.  We discern no abuse of the court's discretion.[9]

In her third claim, Mother argues that the trial court abused its discretion by failing to consider adequately Father's failure to provide timely notice of his relocation to Berks County.  Mother's Brief at 34-37.  She directs our attention to Section 5337(c), which she states required Father to notify her of his move well in advance.[10]  *Id.* at 34-35.  Mother asserts that Father's failure to notify

_____

[8] In its opinion, the trial court states that Father "relocated" despite its finding that his move did not impair Mother's custodial rights significantly.  *See* Trial Court Opinion, 7/18/2018, at 13 ("Father was permitted to relocate since his relocation would ultimately have no substantive effect on the existing custody [a]greement that the parties made.").  We note that this Court need not agree with the court's exact rationale and may affirm on any basis that the record supports.  *In re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018) ("The 'right for any reason' doctrine allows an appellate court to affirm the trial court's decision on any basis that is supported by the record.").

[9] It is important to note that, even in cases that are not technically relocation matters, but where the children stand to move a significant distance, "trial courts should still consider the relevant factors of [S]ection 5337(h) in their [S]ection 5328(a) best interests analysis." *D.K. v. S.P.K.*, 102 A.3d 467, 476 (Pa. Super. 2014).

[10] Section 5337(c) provides that a party proposing relocation must provide notice no later than sixty days in advance, unless he or she did not and could not reasonably know of the relocation in time and cannot delay the relocation in order to comply with the sixty-day requirement.  23 Pa.C.S.A. § 5337(c).  In that case, the party must provide notice no later than ten days after learning of the impending relocation.  *Id.*

her was particularly egregious because the parties were negotiating the September 12, 2017 custody stipulation at the time, and she would not have agreed to the stipulation if she knew Father was going to move. *Id.* at 36-37.

As discussed above, the record reveals that Father did not "relocate" pursuant to our child custody statute, because his move to Berks County did not impair Mother's exercise of her custodial rights significantly. Moreover, it is apparent from the trial court's opinion that it did consider Father's failure to provide notice of his move when rendering its decision. The court noted that Mother also failed to provide notice of her move to Montgomery County, observing that both parties "had not communicated with each other regarding their relocation." Trial Court Opinion, 7/18/2018, at 14. The court was free to weigh this evidence as it saw fit, and we must defer to its determination. *V.B.*, 55 A.3d at 1197.

Next, Mother argues that the trial court erred by concluding that it would be in the Children's best interests for the parties to share physical custody. Mother's Brief at 38-44. She takes issue with several of the court's findings as to the Section 5328(a) factors. Mother challenges the court's finding as to Section 5328(a)(2), contending that Father abused her in the past and that the court failed to consider the threat of harm that he poses to her. *Id.* at 40. Mother further challenges the court's findings as to Sections 5328(a)(4), (5), (11) and (13), asserting that the Children have a stronger connection to

Montgomery County than Berks County and that waking up early and traveling from Father's home to S.M.'s school is detrimental to them. *Id.* at 40-43. As part of her argument with respect to Section 5328(a)(13), Mother maintains that the court faulted her unfairly for moving to Montgomery County without notifying Father. *Id.* at 42-43. She insists that she moved only a distance of six miles and that she had a temporary PFA order against Father at the time, which excused her from providing notice. *Id.* Finally, Mother challenges the court's finding as to Section 5328(a)(16), asserting that the court should have given more weight to the fact that Father failed notify her of his impending relocation while negotiating the September 12, 2017 custody stipulation. *Id.* at 43-44.

As we stated above, it is within the purview of the trial court to assess the credibility of witnesses and weigh the evidence when reaching a custody decision. *V.B.*, 55 A.3d at 1197. The record supports the court's findings in this case, and we may not set them aside to reach Mother's desired result. While Mother claimed, during the custody hearing, that Father had abused her in the past, she admitted that her PFA proceedings ended in dismissal after a hearing. N.T., 3/8/2018, at 83-84, 103-04. Moreover, the trial court in the custody proceedings heard evidence tending to suggest that Mother's claims of abuse were unreliable. For example, Mother testified that Father punched her in the face, leaving a mark. *Id.* at 137. This mark was visible on a picture of Mother that the court viewed during the hearing. *Id.* at 140. However,

Mother later admitted that she had been "kicked in the face" while performing her job as a paramedic prior to commencing the PFA proceedings against Father. *Id.* at 132, 141-42. This incident may have been the actual source of the mark visible in the picture.

As for Mother's remaining contentions, she testified that the Children were overall doing very well under the shared physical custody arrangement. *Id.* at 115, 182. This arrangement accommodates the parties' unusual work schedules while also awarding them a nearly equal amount of custody time with the Children. While the Children may not have any connection to Berks County other than Father, it does not follow that it would be in the Children's best interests to spend less time with Father. Finally, we note that the record belies Mother's claim concerning her failure to provide notice to Father before moving to Montgomery County. Mother testified initially that she did not notify Father because "I had a PFA at the time." *Id.* at 103. However, she later admitted that the PFA proceeding had already ended in dismissal by the time of her move, and that she did not provide notice merely because "I didn't want him to know . . . where I lived." *Id.* at 103-04, 108. We discern no abuse of discretion by the trial court.

In her fifth and final claim, Mother argues that the trial court abused its discretion by failing to find Father in contempt, sanction him, and/or award her with counsel fees. Mother's Brief at 44-45. Mother emphasizes once again

that Father failed to notify her of his impending relocation to Berks County while negotiating their September 12, 2017 custody stipulation. *Id.*

Our child custody statute provides as follows, in relevant part:

**(g) Contempt for noncompliance with any custody order.—**

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

(2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S.A. § 5323(g).[11]

In order to support a finding of civil contempt, the petitioning party must demonstrate by a preponderance of the evidence "(1) that the contemnor had

---

[11] The statute also provides that a trial court "may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S.A. § 5339.

notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Coffman v. Kline**, 167 A.3d 772, 780 (Pa. Super. 2017) (quoting **Sutch v. Roxborough Memorial Hosp.**, 142 A.3d 38, 67-68 (Pa. Super. 2016), *appeal denied*, 163 A.3d 399 (Pa. 2016)).

As we have discussed throughout this memorandum, the record reveals that Father's move to Berks County was not a "relocation" as it did not impair Mother's custodial rights significantly. Therefore, Father was not in contempt of the March 2, 2017, and September 22, 2017 orders prohibiting him from relocating without notice to Mother. This claim does not entitle Mother to relief.

Accordingly, we conclude that the trial court did not abuse its discretion or commit an error of law by denying Mother's petition for primary physical custody of the Children. In addition, we conclude that the court did not abuse its discretion or commit an error of law by dismissing Mother's petition for contempt and by denying her counter-affidavit opposing Father's purported relocation. As a result, we affirm the court's March 8, 2018 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/31/18